UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRICK LEE SMITH,

                Petitioner,

v.                                  CASE NO. 5:10-cv-11052
                                  HONORABLE JOHN CORBETT O'MEARA

CATHERINE S. BAUMAN,

                Respondent.

_____/

**<u>OPINION AND ORDER</u>**
**<u>GRANTING PETITIONER'S MOTIONS TO FILE AFFIDAVITS [99, 102],</u>**
**<u>LETTERS [101], AND A STATE-COURT MOTION [116],</u>**
**<u>DENYING PETITIONER'S REMAINING MOTIONS AND REQUESTS</u>**
**<u>[85-94, 96, 98, 100, 103-04, 109-113, 115, 117-119, 121],</u>**
**<u>DENYING THE AMENDED PETITION FOR WRIT OF HABEAS CORPUS [66],</u>**
**<u>DECLINING TO GRANT A CERTIFICATE OF APPEALABILITY,</u>**
**<u>BUT GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL</u>**

## I. Introduction

This matter has come before the Court on petitioner Derrick Lee Smith's *pro se*

motions and amended petition for the writ of habeas corpus under 28 U.S.C. § 2254.

The habeas petition challenges Petitioner's plea-based convictions for two counts of

kidnapping, Mich. Comp. Laws § 750.349, and six counts of criminal sexual conduct in

the first degree, Mich. Comp. Laws § 750.520b(1)(c).  Respondent Catherine S.

Bauman urges the Court to deny the amended petition on grounds that Petitioner's

claims lack merit, are procedurally defaulted, or were waived by his no-contest plea.

Additionally, Respondent contends that some of the claims are second or successive

claims or barred by the statute of limitations.

The Court agrees that Petitioner's claims do not warrant habeas relief. Accordingly, the amended habeas petition will be denied.

## II. Background

### A. The Plea, Sentence, and Direct Appeal

In 2008, Petitioner was charged in Wayne County, Michigan with kidnapping and first-degree criminal sexual conduct. The charges arose from allegations that Petitioner kidnapped two women in Detroit on January 13, 2008, and then sexually assaulted the women. On October 14, 2008, Petitioner pleaded no contest, as charged, to two counts of kidnapping, Mich. Comp. Laws § 750.349, and six counts of criminal sexual conduct in the first degree, Mich. Comp. Laws § 750.520b(1)(c) (sexual penetration during the commission of another felony). There was no plea agreement, but the trial court agreed to sentence Petitioner at the low end of the sentencing guidelines, which applied to the minimum sentence.[1] The guidelines were scored at 270 to 450 months (twenty-two and

---

[1]  Pursuant to *People v. Cobbs*, 443 Mich. 276; 505 N.W.2d 208 (1993),

> a judge may participate in sentence discussions. At the request of a party, and not on the judge's own initiative, a judge may state on the record the length of sentence that, on the basis of the information then available to the judge, appears to be appropriate for the charged offense.
>
>                    . . . .
>
> The judge's preliminary evaluation of the case does not bind the judge's sentencing discretion, since additional facts may emerge during later proceedings, in the presentence report, through the allocution afforded to the prosecutor and the victim, or from other sources. However, a defendant who pleads guilty or nolo contendere in reliance upon a judge's preliminary evaluation with regard to an appropriate sentence has an absolute right to withdraw the plea if the judge later determines that the sentence must exceed the preliminary evaluation.

*Id.*, 443 Mich. at 283; 505 N.W.2d at 212 (footnote and emphasis omitted).

2

a half to thirty-seven and a half years).  The maximum penalty for each offense was life imprisonment.  On October 29, 2008, the trial court sentenced Petitioner within the sentencing guidelines to imprisonment for eight concurrent terms of 270 to 900 months (twenty-two and a half to seventy-five years).

Petitioner appealed his convictions and sentence through counsel on grounds that the trial court erred by (1) not giving him credit for the time he was incarcerated awaiting resolution of the charges and (2) ordering him to pay attorney fees without determining his ability to pay.  The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented."  *People v. Smith*, No. 294843 (Mich. Ct. App. Jan. 4, 2010).

Petitioner raised the same issues in the Michigan Supreme Court and requested a remand so that he could file a supplemental brief in the Michigan Court of Appeals. On May 25, 2010, the Michigan Supreme Court granted permission to add issues, but denied leave to appeal because it was not persuaded to review the issues.  *See People v. Smith*, 486 Mich. 929; 781 N.W.2d 818 (2010) (table).

## B.  This Case and the Post-Conviction Proceedings in State Court

On March 16, 2010, while Petitioner's appeal was still pending in the Michigan Supreme Court, Petitioner filed his first habeas corpus petition in this case.  (ECF No.1). The typing in the pleading is too faint to be legible, but three months after Petitioner filed it, Petitioner moved to hold his habeas petition in abeyance pending exhaustion of state remedies.  (ECF No. 4).  On August 31, 2010, the Court granted Petitioner's motion and closed this case for administrative purposes.  (ECF No. 7).

3

On April 30, 2012, Petitioner filed an amended habeas corpus petition in which he asserted fourteen grounds for relief and stated that he had fully exhausted his state remedies.  (ECF No. 20).  On July 19, 2012, the Court re-opened this case and directed Respondent to file an answer to the amended petition.  (ECF No. 21).

On December 13, 2012, Petitioner filed a motion for relief from judgment and miscellaneous other motions in the state trial court.  In his motion for relief from judgment, Petitioner claimed that (1) the trial court deprived him of a fair trial by failing to grant his motion for a change of venue, (2) his conviction and sentence should be dismissed because the state district court raised the amount of bond, (3) the complainants' testimony in state court was false, (4) the prosecutor failed to provide him with an opportunity to fully review crucial evidence, (5) no warrant was issued, as required by the Michigan Court Rules, (6) the state district court failed to hold a timely preliminary examination, (7) the prosecutor failed to give him an opportunity to review all the evidence, as required by the Michigan Court Rules, (8) the trial court deprived him of a fair trial by denying his motion for polygraph testing, (9) he was actually innocent of the charged crimes, (10) the charges and convictions violate the Double Jeopardy Clause, (11) he was denied his right to have a preliminary examination within fourteen days of the warrant being issued, (12) the state district court failed to rule on his motion to dismiss the criminal charges, (13) the only reason he entered a no-contest plea was to get out of the Wayne County Jail, and (14) the Michigan Court of Appeals denied leave to appeal without considering his request to file a *pro se* supplemental brief.  On or about September 13, 2013, Petitioner filed another motion for relief from judgment in

4

which he raised most of the same issues and some additional claims regarding the state district-court proceedings, his plea and pre-plea events, his sentence, and the state trial court.

While Petitioner's post-conviction motions were pending in state court, Respondent moved to dismiss the habeas petition on the basis that Petitioner had failed to exhaust state remedies for his claims.  (ECF No. 24).  Petitioner moved for a stay on the basis that his post-judgment motion was pending in state court. (ECF No. 30).

The case was referred to the Magistrate Judge who recommended that the Court deny Respondent's motion to dismiss the habeas petition and to grant Petitioner's motion for a stay.  (ECF No. 36).  The Court adopted the Magistrate Judge's Report and Recommendation, denied Respondent's motion to dismiss, and held this case in abeyance. (ECF No. 43).

Beginning on September 6, 2013, Petitioner filed a motion for discovery and several motions to lift the stay.  (ECF Nos. 45-49, 51-52, and 54).  The Magistrate Judge recommended that the Court deny Petitioner's motions because Petitioner had not yet availed himself of fact-finding procedures in the state court.  (ECF No. 55).  The Court adopted the Magistrate Judge's Report and Recommendation and denied without prejudice Petitioner's motions for discovery and to lift the stay.  (ECF No. 58).

In the meantime, the state trial court denied Petitioner's motion for relief from judgment and his other post-conviction motions.  The trial court found no merit in some of the claims and stated that Petitioner had failed to demonstrate "good cause" for failing to raise his jurisdictional claims previously and "actual prejudice from the alleged

irregularities." The court also stated that Petitioner had failed to demonstrate a defect in the proceedings that would render his plea involuntary to a degree that it would be manifestly unjust to allow the conviction to stand. *See People v. Smith,* No. 08-008639-01-FC (Wayne County Cir. Ct. Oct. 21, 2013). The Michigan Court of Appeals denied leave to appeal, citing Michigan Court Rule 6.508(D)(3). *See People v. Smith*, No. 319151 (Mich. Ct. App. Feb. 11, 2014).

Petitioner subsequently filed another motion to lift the stay in this case. He claimed that he had done all he could to exhaust state remedies. (ECF No. 56). The Magistrate Judge then recommended that the Court grant Petitioner's new motion to lift the stay. (ECF No. 61).

On July 29, 2014, the Michigan Supreme Court denied leave to appeal the Court of Appeals decision in case number 319151. *See People v. Smith*, 496 Mich. 865; 850 N.W.2d 477 (2014) (table). This Court then adopted the Magistrate Judge's report and recommendation to lift the stay and re-open this case. In the same order, the Court directed Petitioner to file an amended petition (or indicate his intent to rely on the previous amended petition). (ECF No. 65). Petitioner subsequently filed an amended habeas corpus petition (ECF No. 66), and Respondent filed an answer to the amended petition (ECF No. 73). Petitioner filed two replies to Respondent's answer (ECF No. 81, 97) and a reply brief (ECF No. 107). Beginning on April 10, 2015, Petitioner filed numerous motions and requests seeking another stay, dismissal of the charges, and other relief. (ECF Nos. 85–94, 96, 98-104, 109-113, 115-119, 121).

Respondent asserts in a thorough and comprehensive answer to the second amended petition that some of Petitioner's claims are procedurally defaulted and some claims are barred by the statute of limitations. Although the Court appreciates Respondent's careful review of the issues, neither the procedural-default doctrine, nor the statute of limitations, are jurisdictional matters. *See Trest v. Cain*, 522 U.S.87, 89 (1997) (stating that "a procedural default . . . is not a jurisdictional matter"); *Holland v. Florida*, 560 U.S. 631, 645 (2010) (stating that the statute-of-limitations defense is not jurisdictional) (quoting *Day v. McDonough*, 547 U.S. 198, 205 (2006)). The Court therefore finds it unnecessary to determine whether Petitioner's claims are procedurally defaulted or untimely. The Court proceeds to address Petitioner's claims without regard to whether the claims are procedurally defaulted or untimely.

### III. Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). Pursuant to § 2254, the court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

7

28 U.S.C. § 2254(d).  To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his claims "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement."  *Richter*, 562 U.S. at 103.

If the state courts do not address a petitioner's claims on the merits, AEDPA deference does not apply, and a habeas court's review is *de novo*.  *Scott v. Houk*, 760 F.3d 497, 504 (6th Cir. 2014) (quoting *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)), *cert. denied*, 135 S. Ct. 1552 (2015).  This Court nevertheless finds it unnecessary to decide whether the state courts adjudicated Petitioner's claims "on the merits" or on some other ground, because the Court would reach the same result whether the Court deferred to the state court's decision or reviewed the issue *de novo*. *Cf. Cotto v. Herbert*, 331 F.3d 217, 252 (2d Cir. 2003) (declining to decide whether the state court's ruling on a Sixth Amendment claim was an "adjudication on the merits" within the meaning of § 2254(d), because the court would reach the same result under a *de novo* standard of review).

## IV.  Discussion

The Court understands the most recent amended petition to allege the following grounds for relief:

1.  Petitioner was denied his right to a preliminary examination within fourteen days of his arraignment;

2.  Petitioner's plea was not knowing under the no-contest statute because the statute says that a no-contest plea is not an admission of guilt;

3.  Petitioner's sentence was invalid because Petitioner never admitted to being guilty;

8

4.  the plea was not knowing and voluntary because Petitioner stated at his plea and sentencing that he was not guilty and that he entered a plea to be relieved of conditions in the county jail;

5.  the state trial court lacked authority to take Petitioner's plea because the state district court violated the rules of court;

6.  the state district court illegally bound Petitioner over to circuit court to stand trial without first conducting a hearing on whether Petitioner was criminally responsible for the crime;

7.  the sentencing judge failed to fully consider the pre-sentence investigation report in which Petitioner stated that he is innocent and that he was forced to plead no contest to get out of the county jail;

8.  the plea was not valid and the state circuit court lacked jurisdiction because the case was not properly bound over to circuit court and the trial court judge stated that there was no plea or sentencing agreement;

9.  the plea was invalid, and the trial court lacked jurisdiction because there was no hearing to determine criminal responsibility;

10.   the plea was invalid because there was no order to conduct a hearing to determine Petitioner's criminal responsibility and because the trial court neglected to say what kind of a plea it was and also said that there was no plea;

11.   the plea was invalid because the trial court failed to consider the presentence investigation report in which Petitioner stated that the only reason he was pleading no contest was to get out of the county jail;

12.  the plea was invalid because there was no order for a hearing on criminal responsibility;

13.  the trial court deprived Petitioner of a fair trial by denying Petitioner's request for a change of venue;

14.  the state district court violated Petitioner's constitutional rights by setting bond at $150,000;

15.  the trial court should have dismissed the charges because the complainants' testimony was false;

16.  the Wayne County prosecutor failed to give Petitioner an opportunity to fully review crucial evidence that was meant to be used against Petitioner;

17.  no warrant was issued, as required by the Michigan Court Rules;

18.  the state district court failed to hold a timely preliminary examination;

19.  the Wayne County Prosecutor failed to give Petitioner an opportunity to review all the evidence, as required by the Michigan Court Rules;

20.  the state courts failed to grant Petitioner's motion for polygraph tests;

21.  Petitioner is actually innocent of the charged crimes and was denied a prompt preliminary examination;

21.a.[2]  Petitioner was charged twice for the same offense in violation of his right not to be placed in double jeopardy;

22.   the preliminary examination was not held within fourteen days of the warrant being issued;

23.  The state district court failed to rule on Petitioner's motion to dismiss the charges against him;

24.  the plea should be vacated because the only reason Petitioner entered the no-contest plea was to get out of the Wayne County Jail;

25.  the Michigan Court of Appeals denied leave to appeal for lack of merit without considering Petitioner's request to file a *pro se* supplemental brief;

26. the preliminary examination was not held on the fourteenth day;

27.  Petitioner was unlawfully arrested and, therefore, the state courts lacked jurisdiction;

28.  jurisdictional defects are *de novo* and may be raised at any time;

29.  the state magistrate was powerless to issue the felony warrant in the absence of the prosecutor's signature;

30.  the state trial court lacked jurisdiction in the absence of a proper bind-over to circuit court;

31. the felony complaint was defective because it lacked information to support independent judgment that probable cause existed;

---

[2] Petitioner failed to properly number this claim. The Court has numbered it 21.a. so as to maintain Petitioner's numbering system for his remaining claims.

32.  the state trial court never acquired subject-matter jurisdiction because the magistrate's return to circuit court was not filed until after the arraignment;

33.  the criminal information (charging document) was insufficient to provide the state trial court with jurisdiction;

34.  the state trial court should have disqualified itself from deciding Petitioner's motion for relief from judgment;

35.  the state trial court should have disqualified itself because the court verbally attacked Petitioner during the state-court proceedings;

36.  the state trial court failed to provide Petitioner with transcripts needed to prepare a supplemental brief on direct appeal;

37. the complaining witnesses lied and fabricated the charges;

38.  the state trial court's failure to provide Petitioner with transcripts and other documents deprived Petitioner of the opportunity to fully and effectively prepare arguments on direct appeal of his convictions;

39.  the failure to provide Petitioner with transcripts deprived Petitioner of his right to a complete appeal;

40.  the failure to conduct the preliminary examination within fourteen days violated Petitioner's speedy trial rights and his right of confrontation; and

41.  the failure to provide Petitioner with transcripts and other documents deprived Petitioner of due process and his right to fully present all the facts to the state appellate courts.

## A.  Waived Claims

### 1.  The Pre-Plea Events

Many of Petitioner's claims pertain to events that preceded Petitioner's plea.  At issue are the claims about:  a delay in the preliminary examination (claims 1, 18, 21-22, 26, 40); the lack of a hearing on criminal responsibility (claim 6); the denial of Petitioner's request for a change of venue (claim 13); the amount of bond (claim 14); the

complainants' allegedly false testimony (claims 15 and 37); the prosecutor's failure to

provide discovery or to allow Petitioner an opportunity to review all the evidence (claims

16 and 19); defects in the warrant and the complaint, Petitioner's arrest, and the

magistrate's bind-over to circuit court (claims 17, 27, 29, and 31-33); the failure to grant

Petitioner's motion for polygraph tests (claim 20); and the state district court's failure to

rule on Petitioner's motion to dismiss the charges (claim 23).

   The Court is not required to review nonjurisdictional claims arising from events

that occurred before a petitioner entered a plea, because a guilty plea and, by

extension, a no-contest plea

> represents a break in the chain of events which has preceded it in the
> criminal process.  When a criminal defendant has solemnly admitted in
> open court that he is in fact guilty of the offense with which he is charged,
> he may not thereafter raise independent claims relating to the deprivation
> of constitutional rights that occurred prior to the entry of the guilty plea.
> He may only attack the voluntary and intelligent character of the guilty plea
> . . . .

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  Stated differently,

> [a] plea of guilty and the ensuing conviction comprehend all of the factual
> and legal elements necessary to sustain a binding, final judgment of guilt
> and a lawful sentence.  Accordingly, when the judgment of conviction
> upon a guilty plea has become final and the offender seeks to reopen the
> proceeding, the inquiry is ordinarily confined to whether the underlying
> plea was both counseled and voluntary.  If the answer is in the affirmative
> then the conviction and the plea, as a general rule, foreclose the collateral
> attack.

*United States v. Broce*, 488 U.S. 563, 569 (1989); *see also Post v. Bradshaw*, 621 F.3d

406, 426-27 (6th Cir. 2010) (stating that, "[b]y pleading no contest, Post waived any

objection to the sufficiency of the evidence"); *United States v. Freed*, 688 F.2d 24, 25-26

(6th Cir. 1982) (stating that, "[l]ike a plea of guilty, a plea of nolo contendere constitutes

a waiver of all so-called 'non-jurisdictional defects' or, more accurately, any claims not logically inconsistent with the issue of factual guilt, as well as the right to contest the factual merits of the charges against him").

Petitioner was represented by counsel at the plea proceeding, and the record indicates that his plea was voluntary. As such, he has waived his right to challenge the alleged deprivation of rights that occurred before he entered his plea. The Court therefore declines to grant relief on claims 1, 6, 13-23, 26-27, 29, 31-33, 37, and 40.

### 2. The Double Jeopardy Claim

Petitioner alleges in claim 21.a. that his convictions violate his right not to be placed in double jeopardy. He claims that he was charged twice for the same crime.

The *Tollett/Broce* rule quoted above applies to double jeopardy claims unless it appears "on the face of the record [that] the [trial] court had no power to enter the conviction or impose the sentence," *Broce*, 488 U.S. at 569, or "the charge is one which the State may not constitutionally prosecute." *Id.* at 575 (quoting *Menna v. New* York, 423 U.S. 61, 62 n.2 (1975)); *see also United States v. Ehle*, 640 F.3d 689, 693 (6th Cir. 2011) (explaining that, "a guilty plea or plea agreement does not waive a double jeopardy challenge to a charge where, judged from the face of the indictment and the record existing at the time the plea was entered, the charge is one that the government could not constitutionally prosecute under the Double Jeopardy Clause").

Here, the state trial court had jurisdiction over Petitioner's case because Petitioner was charged with eight felonies, and "Michigan circuit courts . . . unquestionably have jurisdiction over felony cases." *People v. Lown*, 488 Mich. 242,

13

268, 794 N.W.2d 9, 23 (2011).  Furthermore, the two counts of kidnapping involved

different victims, and where there are two victims, there are two crimes and no violation

of the Double Jeopardy Clause.  *See People v. Lovett*, 90 Mich. App. 169, 174; 283

N.W.2d 357, 360 (1979) (stating that, "[w]here crimes against persons are involved we

believe a separate interest of society has been invaded with each victim and that,

therefore, where two persons are assaulted, there are two separate offenses").  As for

the six counts of criminal sexual conduct, there were three counts of sexual penetration

for each victim.  Each act of sexual penetration constituted a separate crime.  *People v.

Dowdy*, 148 Mich. App. 517, 521; 384 N.W.2d 820, 822 (1986).  Thus, the State had

authority to charge Petitioner with eight crimes, and the trial court had power to accept

Petitioner's plea and sentence him.  The general waiver rule of *Tollett* and *Broce,*

therefore, applies here to bar Petitioner's double jeopardy claim.[3]

## B.  Petitioner's Plea

---

[3]  Petitioner's double-jeopardy claim also lacks merit.  The Supreme Court has said that
"[t]he Double Jeopardy Clause 'protects against a second prosecution for the same
offense after acquittal.  It protects against a second prosecution for the same offense
after conviction.  And it protects against multiple punishments for the same offense.' "
*Brown v. Ohio*, 432 U.S. 161, 165 (1977) (quoting *North Carolina v. Pearce*, 395 U.S.
711, 717 (1969)).

        Under *Blockburger v. United States*, 284 U.S. 299 (19832), "where the same act
or transaction constitutes a violation of two distinct statutory provisions, the test to be
applied to determine whether there are two offenses or only one, is whether each
provision requires proof of a fact which the other does not."  *Id.* at 304.  First-degree
criminal sexual conduct, as charged in this case, requires sexual penetration during the
commission of another felony, Mich. Comp. Laws § 750.520b(1)(c); kidnaping does not.
Kidnapping requires knowing restraint of a person, that is, "restrict[ing] a person's
movements or [confining] the person so as to interfere with that person's liberty without
that person's consent or without legal authority."  Mich. Comp. Laws § 750.349(1) and
(2).  "Knowing restraint" is not an element of first-degree criminal sexual conduct.
Because each offense requires proof of an element not contained in the statute for the
other offense, the Double Jeopardy Clause was not violated.

Several of Petitioner's claims challenge his no-contest plea.  Petitioner alleges that his plea was involuntary, unknowing, or unintelligent because:  he never admitted guilt (claims 2-4); the trial court neglected to say what kind of plea it was and also stated that there was no plea (claim 8); the state courts failed to order or conduct a hearing on whether he was criminally responsible for the crimes (claims 9-10 and 12); and the only reason he pleaded no contest was to get out of the county jail (claims 11 and 24).

### 1.  Clearly Established Federal Law

"A guilty or no-contest plea involves a waiver of many substantial constitutional rights," *Fautenberry v. Mitchell*, 515 F.3d 614, 636 (6th Cir. 2008) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)), and an involuntary plea is "an impairment of a defendant's substantial rights," *United States v. Martin*, 668 F.3d 787, 792 (6th Cir. 2012).  Consequently, the plea must be a voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970).

For a plea to be valid, the defendant must appreciate the consequences of his waiver of constitutional rights, waive his rights without being coerced to do so, and understand the rights that he is surrendering.  *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir. 2009).  The defendant also must understand the essential elements of the offense and be aware of the maximum sentence that could be imposed.  *Id*. at 408-09.  Courts consider all the relevant circumstances when determining whether a plea was voluntary.  *Brady*, 397 U.S. at 749.

### 2.  Application

15

At the plea in this case, defense counsel informed the trial court that Petitioner wanted to plead no contest to the charges.  When the prosecutor inquired about the basis for pleading no contest, the trial court stated that a no-contest plea is the equivalent of a guilty plea and that Petitioner had the option of pleading either guilty or no contest.  The court explained that there was no plea bargain, that Petitioner would be required to plead guilty or no contest as charged, and that Petitioner also would have to sign a paper acknowledging that he understood his constitutional rights.  Petitioner responded, "Not a problem," and then signed the paper.  (Plea Tr. at 4-7, Oct. 14, 2008.)

The trial court subsequently named the charges and explained that the crimes were punishable by life imprisonment because Petitioner was a fourth habitual offender. (*Id.* at 7.)  The court further explained that the sentencing guidelines were 270 to 450 months on the minimum sentence and that the court had agreed to sentence Petitioner at the low end of the guidelines (270 months or twenty-two and a half years).  (*Id.* at 7-8.)  The court then asked Petitioner how he wanted to plead, and Petitioner answered, "Nolo contendere."  (*Id.* at 8.)

Petitioner subsequently claimed to understand that his plea would resolve his case and that there would be no withdrawal of his plea. (*Id.* at 9, 11.)  Petitioner also claimed to fully understand the constitutional rights that he was waiving by pleading no contest.  He then repeated that he wished to plead no contest.  (*Id.* at 9-10.)  He said that no one was forcing him to plead and that no one had promised him anything to

16

induce his plea.  He assured the trial court that he was pleading freely and voluntarily and that he understood the penalties for his crimes.  (*Id.* at 11.)

 Petitioner said nothing about pleading no contest to get out of jail, and even though he did not say he was guilty, he agreed that the transcripts of the preliminary examination could be incorporated by reference for purposes of his plea.  (*Id.* at 8.)  The trial court, moreover, correctly stated that the no-contest plea was the equivalent of a guilty plea (*id.* at 5) and that there was no plea bargain (*id.* at 6).

As for the state courts' failure to conduct a hearing on whether Petitioner was criminally responsible for the crimes, there was no examination for criminal responsibility because Petitioner declined to participate in the examination and he informed the psychologist that he did not want to discuss the alleged offenses.  *See* psychologist Dianne K. Sherman's letter to the state district court on April 29, 2008, Pet. for Writ of Habeas Corpus, ECF No. 66, Pg ID 43.  Furthermore, the lack of an examination or hearing on criminal responsibility did not affect the voluntariness of Petitioner's plea.

To summarize, Petitioner claimed to understand the charges against him, the rights he was waiving, the consequences of his plea, and the maximum sentence.  He also denied being coerced into pleading no contest.  The Court therefore concludes that Petitioner's plea was voluntary, knowing, and intelligent.  Habeas relief is not warranted on claims 2-4, 8-12, and 24.

## C.  The State District Court and State Trial Court

Petitioner raises several claims about the state district court and state trial court.

17

### 1.  The Alleged Violations of State Law and Lack of Jurisdiction

Petitioner alleges that the state trial court lacked authority to take his plea because the state district court violated the Michigan Rules of Court (claim 5) and because there was not a proper bind-over from the district court to the trial court (claims 30 and 32).  Additionally, Petitioner claims that jurisdictional defects may be raised at any time (claim 28).

These claims lack merit because they are based on alleged violations of state law.  "A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law."  *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Instead, "a federal [habeas] court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  Thus, the state district court's alleged violations of the Michigan Court Rules and its allegedly improper transfer of jurisdiction to the state trial court are not grounds for habeas relief.  Furthermore, whether the state trial court was "vested with jurisdiction under state law is a function of the state courts, not the federal judiciary."  *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976).

### 2.  The Alleged Failure to Consider the Pre-sentence Report

Petitioner alleges that the state trial court failed to fully consider the pre-sentence investigation report in which Petitioner stated that he was forced to plead no contest to get out of the county jail (claim 7).  The trial court, however, referred to a report at sentencing.  (Sentencing Tr., at 17, Oct. 29, 2008.)  This suggests that the court did review the pre-sentence report.  Even if the court did not review the report, Petitioner

stated at his sentencing that he was not asking to have his plea set aside.  (*Id.* at 15.)
Consequently, the court's alleged failure to read comments in the report that Petitioner
was forced to plead no contest was harmless.

### 3.  Alleged Bias

Next, Petitioner alleges that the state trial court was prejudiced against him and
should have disqualified itself (claims 34 and 35).  As examples of bias, Petitioner
points to the trial court's comments at the plea proceeding that a no-contest plea is the
equivalent of a guilty plea and that the court did not care whether Petitioner entered a
plea or went to trial.  As additional examples of bias, Petitioner notes that the trial court:
did not reprimand the prosecutor when she described Petitioner as a monster;
sentenced Petitioner to a maximum of seventy-five years in prison; and failed to provide
him with transcripts.  Furthermore, in response to Petitioner's comments at sentencing
that he was pleading no contest so that he and the victims could "get on," the court said,
"I'm sure that society would like you to get out of here too."  (Sentencing Tr., at 15, Oct.
29, 2008.)  In other claims (36, 38-39 and 41), Petitioner raises additional allegations
about the trial court's failure to provide him with transcripts for use on appeal.

Petitioner was entitled to "a judge with no actual bias against [him] or interest in
the outcome of his particular case."  *Bracy v. Gramley*, 520 U.S. 899, 905 (1997).  But
courts ordinarily "presume that public officials have properly discharged their official
duties."  *Id.* at 909 (quotation marks omitted).  To prevail on a claim of judicial bias, a
habeas petitioner must show "there was bias, or such a likelihood of bias or an
appearance of bias that the judge was unable to hold the balance between vindicating

19

the interests of the court and the interests of the accused." *Ungar v. Sarafite*, 376 U.S. 575, 588 (1964). A judge is not recusable for bias or prejudice as a result of what the judge learned in the course of the proceedings. *Liteky v. United States*, 510 U.S. 540, 551 (1994).

The record indicates that the trial court was courteous to Petitioner, business-like, and mindful of Petitioner's rights. At the plea, for example, the trial court carefully explained Petitioner's rights and the implications of his plea. The court also gave Petitioner the option of entering a plea of guilty or no contest or of going to trial.

At the sentencing, the trial court assured Petitioner that, although he would receive no credit in his current case for the time spent in jail, the time would be credited to the case for which he was on parole when he committed the crimes in his current case. The court agreed with Petitioner that no-contest pleas are treated as guilty pleas for purposes of sentencing, and the court allowed Petitioner to express his concerns. The record fails to show that the court was biased, antagonistic, or unable to be fair.

As for providing transcripts, the trial court explained at the plea that an application for leave to appeal would trigger the preparation of transcripts. (Plea Tr. at 17-18, Oct. 14, 2008). The trial court subsequently denied Petitioner's request for transcripts, but the reason for the court's decision was that Petitioner was represented by counsel on appeal and the entire court file, including transcripts, was sent to his appellate attorney. *See People v. Smith*, No. 08-8639-01 (Wayne County Cir. Ct. Nov. 4, 2010), ECF No. 25-10 at 2, Pg ID 490. The court exhibited no bias when making this ruling.

20

As for Petitioner's independent claims about the denial of transcripts and records (claims 36, 38-39 and 41), Petitioner raised these claims in a prior habeas corpus petition. This Court rejected the claims and summarily dismissed Petitioner's habeas petition for failure to show that he was in custody in violation of federal law and that the state court's denial of his request for transcripts was contrary to, or an unreasonable application of, Supreme Court precedent. *See Smith v. Palmer*, No. 12-cv-10958 (E.D. Mich. Apr. 12, 2012).

The United States Court of Appeals for the Sixth Circuit subsequently denied a certificate of appealability. The Sixth Circuit stated that, because Petitioner "failed to demonstrate that the records he requested were relevant to the trial court's jurisdiction, the validity of his no contest plea, or his sentence, reasonable jurists would agree that it was not fundamentally unfair for the state courts to deny his request for records." *Smith v. Palmer*, No. 12-1547 (6th Cir. Nov. 20, 2012).

Petitioner concedes in his reply brief that his claims about the denial of transcripts and documents are second or successive claims. *See* Petitioner's Brief in Support of Reply, ECF No. 107, Pg ID 1583-84. The Court therefore has no jurisdiction to adjudicate claims 36, 38-39, and 41, absent authorization from the Sixth Circuit. 28 U.S.C. § 2244(b)(3)(A).

### 4. Summary

The Court finds no merit in Petitioner's challenges to the state courts' alleged violations of state law, lack of jurisdiction, failure to consider the pre-sentence information report, and bias. Habeas relief, therefore, is not warranted on claims 5, 7,

28, 30, 32, 34 and 35.  The Court has no jurisdiction to consider Petitioner's second or successive claims (36, 38-39 and 41) absent approval from the Court of Appeals.

**D.  The Michigan Court of Appeals**

Petitioner alleges in claim 25 that the Michigan Court of Appeals denied leave to appeal for lack of merit without considering Petitioner's request to file a *pro se* supplemental brief.  This claim, however, is based on alleged violations of state-law procedures, and "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *McGuire*, 502 U.S. at 67-68.  Petitioner therefore has no right to relief on claim 25.

## V.  Conclusion

For all the foregoing reasons, Petitioner's claims lack merit or they were waived by his no-contest plea or they are not proper grounds for habeas relief.  Furthermore, the state courts' rejection of Petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, unreasonable applications of Supreme Court precedent, or unreasonable determinations of the facts.  Accordingly, the amended habeas corpus petition (ECF No. 66) is DENIED.

## VI.  Petitioner's Pending Motions

Petitioner has filed numerous motions, which remain pending before the Court. The Court makes the following rulings on the motions.

The motions to dismiss or to vacate Petitioner's convictions and sentence due to the trial court's alleged lack of jurisdiction (ECF Nos. 85, 86, 88) are denied because,

whether the state circuit court was "vested with jurisdiction under state law is a function of the state courts, not the federal judiciary." *Wills v. Egeler*, 532 F.2d at 1059.

Petitioner's motions to stay this case while he pursues additional state remedies (ECF Nos. 87, 89, 90, 91, 92, 93, 98,110, 117) or submits additional materials to this Court (ECF No. 104) are denied because Petitioner has had several opportunities to raise his claims in state court, and he is attempting to rehash many of the same claims. It further appears that Petitioner no longer has an available state remedy to exhaust.

The request to have the Magistrate Judge prepare a report and recommendation on Petitioner's motions for a stay (ECF No. 94) is denied as moot because the Court has denied the motions for a stay.

The motion for one copy of Petitioner's motion to dismiss (ECF No. 96) is denied without prejudice. The Court will supply Petitioner with a copy of the motion if he identifies it by docket number.

Petitioner's motions for leave to file his affidavit (ECF Nos. 99 and 102) are granted. The affidavits were filed with Petitioner's motions.

Petitioner's motion to file an amended petition for writ of habeas corpus (ECF No. 100) is denied because the affidavit on which he relies is not new evidence. Ms. Gabriel signed the affidavit in 2008, and Petitioner attached a copy of the affidavit to his current petition. As for the testing of rape kits that Petitioner mentions in his motion, he merely speculates that the results of the tests will exonerate him. Thus, there is no basis for amending the petition.

23

The motion for leave to file letters showing that Petitioner sought to have appellate counsel raise certain issues on appeal (ECF No. 101) is granted.  The letters were filed with Petitioner's motion.

The motion to grant the writ of habeas corpus based on twenty-five pages of affidavits from a new witness (ECF No. 103) is denied.  Petitioner did not attach the affidavits to his motion, and to the extent he is submitting new evidence that was not presented to the state courts which adjudicated his claims on the merits, the Court cannot consider the affidavits.  "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The motions to change the respondent's name in the case caption (ECF No. 109, 111, 118) are denied.  Although Petitioner has been transferred more than once to prisons where someone other than respondent Catherine S. Bauman has custody of him, it is not necessary to change the respondent's name at this stage of the case.

The motion for reconsideration (ECF No. 112) of the Court's order dated March 25, 2015, is denied because the motion was not filed within fourteen days of the Court's order and because the Court did not make a "palpable defect" in its ruling on Petitioner's motions to dismiss.  LR 7.1(h)(1) and (3) (E.D. Mich. July 1, 2013).

The motion to introduce a letter from deceased Detroit police officer David Cobb who allegedly confessed to framing Petitioner for the crimes (ECF No. 113) is denied.  Petitioner appears to be raising a freestanding claim of actual innocence, and habeas

24

corpus relief may not be granted on such claims. *Herrera v. Collins*, 506 U.S. 390, 400, 404-05 (1993).

Petitioner's motion to dismiss his criminal case on the basis of the victims' recanting testimony (ECF No. 115) is denied because Petitioner has not demonstrated that the victims' recanted their testimony in state court. Furthermore, to the extent Petitioner is once again raising a freestanding claim of actual innocence, his claim fails under *Herrera v. Collins*, 506 U.S. at 400, 404-05.

Petitioner's motion for leave to submit a copy of his state-court motion to withdraw his plea (ECF No. 116) is granted. A copy of the state-court motion was filed with Petitioner's motion in this Court.

The motion to grant the previously-filed motions for a stay (ECF No. 119) is denied because a stay is not necessary or warranted.

The motion for re-sentencing (ECF No. 121) is denied because Petitioner did not exhaust state remedies for his claim, and his challenges to the scoring of the Michigan sentencing guidelines are not cognizable on federal habeas corpus review. *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007).

## VII. Denying a Certificate of Appealability;
### Granting Leave to Proceed *In Forma Pauperis* on Appeal

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28

25

U.S.C. § 2253(c)(2).  When, as here, "a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists would not debate the Court's assessment of Petitioner's claims.  The Court therefore declines to grant a certificate of appealability on any of Petitioner's claims.   Petitioner nevertheless may proceed *in forma pauperis* on appeal.


Date: March 9, 2016                                s/John Corbett O'Meara
                                                   United States District Judge


I hereby certify that on March 9, 2016 a copy of this opinion and order was served upon the parties of record using the ECF system and/or by first-class U.S. mail.


                                                   s/William Barkholz
                                                   Case Manager