UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRICK LEE SMITH,

        Petitioner,

v.                                      CASE NO. 5:10-cv-11052
                                      HONORABLE JOHN CORBETT O'MEARA

CATHERINE S. BAUMAN,

        Respondent.
_____/

## OPINION AND ORDER

### GRANTING PETITIONER'S REQUEST AND MOTION FOR A DECISION AND FOR COMPLIANCE WITH THE SIXTH CIRCUIT'S ORDER [141, 144],

### GRANTING THE MOTION FOR PERMISSION TO FILE AN AFFIDAVIT [150],

### DENYING PETITIONER'S MOTIONS FOR RELEASE ON BOND [148, 156],

### DENYING PETITIONER'S MOTIONS FOR A WRIT OF HABEAS CORPUS [153, 155],

### DENYING THE REQUEST FOR A REFERRAL TO THE MAGISTRATE JUDGE [157],

### DENYING THE MOTION FOR A WRIT OF HABEAS CORPUS BASED ON NEWLY DISCOVERED CLAIMS [133],

### AND GRANTING A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

      This habeas corpus case has come before the Court on remand from the United States Court of Appeals for the Sixth Circuit. The Sixth Circuit has instructed the Court to treat one of Petitioner's post-judgment motions as a motion to amend. Also before the Court are the following motions and requests filed by Petitioner: to make a decision on his motion regarding newly discovered claims (ECF No. 141) and to comply with the Sixth Circuit's remand order (ECF No. 144); to release him on bond (ECF Nos. 148 and 156); to grant permission to file an

affidavit (ECF No. 150); to grant the writ of habeas corpus (ECF Nos. 153 and 155); and to order the magistrate judge to prepare a report and recommendation (ECF No. 157). The Court grants Petitioner's motions and requests for permission to file an affidavit and to have the Court issue a decision on his post-judgment motion about newly discovered claims. The Court declines to grant release on bond, to issue the writ of habeas corpus, or to refer this matter to a magistrate judge. Additionally, the Court denies Petitioner's motion to grant habeas relief on the basis of newly discovered claims.

## I. Background

Petitioner was charged with kidnaping and sexually assaulting two adult sisters in Detroit on January 13, 2008. On October 14, 2008, he pleaded no contest, as charged, to two counts of kidnapping, Mich. Comp. Laws § 750.349, and six counts of criminal sexual conduct in the first degree, Mich. Comp. Laws § 750.520b(1)(c) (sexual penetration during the commission of another felony). There was no plea agreement between the parties, but the trial court agreed to sentence Petitioner at the low end of the sentencing guidelines, which were scored at 270 to 450 months (twenty-two and a half to thirty-seven and a half years).[1] On October 29, 2008, the trial

---

[1] Pursuant to *People v. Cobbs*, 443 Mich. 276; 505 N.W.2d 208 (1993),

> a judge may participate in sentence discussions. At the request of a party, and not on the judge's own initiative, a judge may state on the record the length of sentence that, on the basis of the information then available to the judge, appears to be appropriate for the charged offense.
>
> . . . .
>
> The judge's preliminary evaluation of the case does not bind the judge's sentencing discretion, since additional facts may emerge during later proceedings, in the presentence report, through the allocution afforded to the prosecutor and the victim, or from other sources. However, a defendant who pleads guilty or nolo contendere in reliance upon a judge's preliminary evaluation with regard to an

2

court sentenced Petitioner within the sentencing guidelines to eight concurrent terms of twenty-two and a half to seventy-five years in prison.[2]

Petitioner appealed his convictions and sentence, but the Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." *People v. Smith*, No. 294843 (Mich. Ct. App. Jan. 4, 2010). On May 25, 2010, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *People v. Smith*, 486 Mich. 929; 781 N.W.2d 818 (2010) (table). Petitioner pursued other post-conviction remedies in state court without success.

On March 16, 2010, Petitioner filed his habeas corpus petition. (ECF No. 1). Three months later, he requested a stay of the federal proceeding until his direct appeal concluded in state court. (ECF No. 4). The Court granted Petitioner's motion for a stay and closed this case for administrative purposes. (ECF No. 7).

On April 30, 2012, Petitioner filed an amended petition (ECF No. 20), and on July 19, 2012, the Court re-opened this case (ECF No. 21). The case was stayed and re-opened one more time, and on September 26, 2014, Petitioner filed a second amended petition. (ECF No. 66). Ultimately, Respondent filed an answer to the petition (ECF No. 73), and on March 9, 2016, the

---

> appropriate sentence has an absolute right to withdraw the plea if the judge later determines that the sentence must exceed the preliminary evaluation.

*Id.*, 443 Mich at 283; 505 N.W.2d at 212 (footnote and emphasis omitted).

[2] The sentencing guidelines involve only the minimum sentence. As explained in *People v. Claypool*, 470 Mich. 715; 684 N.W.2d 278 (2004), criminal defendants in Michigan are

> given a sentence with a minimum and a maximum. The maximum is not determined by the trial judge but is set by law. M.C.L. § 769.8. The minimum is based on guidelines ranges . . . .

*Id.*, 470 Mich. at 730 n.14; 684 N.W.2d at 286 n. 14.

Court denied the petition on the merits. (ECF No. 122). The Sixth Circuit Court of Appeals denied Petitioner's subsequent motion for a certificate of appealability. *See Smith v. Bauman*, No. 16-1545 (6th Cir. Jan. 31, 2017) (ECF No. 138).

Meanwhile, Petitioner filed a successive motion for relief from judgment in the state trial court. He challenged the scoring of his sentencing guidelines and also alleged that he recently became aware that his sentence included a provision for lifetime electronic monitoring. The trial court denied Petitioner's motion on the basis that Petitioner had failed to allege either newly discovered evidence or a retroactive change in the law. *See People v. Smith*, No. 08-8639-01-FC (Wayne Cty. Cir. Ct. Aug. 8, 2016) (unpublished). The Michigan Court of Appeals denied leave to appeal because Petitioner had failed to establish that the trial court erred in denying his post-conviction motion. *See People v. Smith*, No. 335215 (Mich. Ct. App. Feb. 6, 2017). The Michigan Supreme Court denied leave to appeal because Petitioner's motion for relief from judgment was barred by the Michigan court rule governing second or successive motions. *See People v. Smith*, 501 Mich. 945; 904 N.W.2d 609 (2017).

Petitioner also filed several post-judgment motions in this Court, including one which he titled "Motion for Leave to File Motion for Granting Writ of Habeas Corpus Based on New Claims . . . Showing the Judgment of Sentence is Illegal . . . ." (ECF No. 133). The Court transferred the motion to the Sixth Circuit Court of Appeals as a second or successive habeas petition pursuant to *In re Sims*, 111 F.3d 45 (6th Cir. 1997, and *Gonzalez v. Crosby*, 545 U.S. 524 (2005). (ECF No. 137).

The Sixth Circuit ruled that the Court erred when it transferred Petitioner's motion to the Sixth Circuit as a second or successive petition. The Sixth Circuit stated that, because Petitioner

4

filed his motion before the time to appeal the denial of his habeas petition expired, the motion was not a second or successive habeas petition. The Sixth Circuit stated that the Court should have ruled on the merits of Petitioner's motion as a motion to amend. Accordingly, the Sixth Circuit vacated this Court's order transferring Petitioner's motion to the Sixth Circuit and remanded the case to this Court for consideration of the motion on its merits. *See In re Derrick Lee Smith*, No. 16-1616 (6th Cir. Apr. 10, 2017) (ECF No. 139).

On remand, this Court ordered Respondent to file a response to Petitioner's motion to amend. (ECF No. 145). Respondent filed a supplemental answer to the petition (ECF No. 146) in which she argues that Petitioner's claims are procedurally defaulted and barred by the one-year statute of limitations. Petitioner filed a reply and the pending motions.

The Court now proceeds to address Petitioner's new claims, as set forth in his motion to grant the writ of habeas corpus on the basis of newly discovered claims. The Court has determined that the claims do not warrant habeas relief. Accordingly, in the interest of efficiency, the Court goes directly to the merits of Petitioner's claims, rather than analyzing whether the claims are procedurally defaulted or barred by the statute of limitations.[3]

## II. Analysis

Petitioner seeks to have the Court consider two new claims. His first claim alleges that his sentence is invalid and that he should be permitted to withdraw his plea because the trial court failed to inform him that he would be sentenced to lifetime electronic monitoring if he pleaded no contest. Petitioner's second claim alleges that his sentence is illegal because the trial court miscalculated the sentencing guidelines.

---

[3] A procedural default is not a jurisdictional matter. *Trest v. Cain*, 522 U.S. 87, 89 (1997). Likewise, the statute-of-limitations defense is not jurisdictional. *Holland v. Florida*, 560 U.S. 631, 645 (2010) (quoting *Day v. McDonough*, 547 U.S. 198, 205 (2006)).

As noted above, the Sixth Circuit has ordered the Court to treat Petitioner's motion as a motion to amend his habeas petition. Federal Rule of Civil Procedure 15 permits parties to file amended and supplemental pleadings, but

> "[w]hen a party seeks to amend a complaint after an adverse judgment, it . . . must shoulder a heavier burden [than if the party sought to amend a complaint beforehand]. Instead of meeting only the modest requirements of Rule 15, the claimant must meet the requirements for reopening a case established by Rules 59 or 60." *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.,* 616 F.3d 612, 616 (6th Cir. 2010) . . . .

*Clark v. United States*, 764 F.3d 653, 661 (6th Cir. 2014).

Federal Rule of Civil Procedure 59(e) permits a party to move to alter or amend a judgment within twenty-eight days after entry of the judgment. The Court entered its opinion and judgment denying Petitioner's habeas petition on March 9, 2016, and on June 1, 2016, Petitioner filed his motion regarding the new issues. Petitioner's motion is untimely under Rule 59(e) because he filed it more than twenty-eight days after entry of the Court's judgment on the docket.

Under Federal Rule of Civil Procedure 60(b), a party may move for relief from a final judgment for several specific reasons, including "newly discovered evidence," and for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(2) and (6). "A motion under Rule 60(b) must be made within a reasonable time – and for reasons (1), (2), and (3) no more than a year after the entry of the judgment . . . ." Fed. R. Civ. P. 60(c)(1). Petitioner filed his motion within a reasonable time and less than a year after this Court's judgment. Thus, his Rule 60(b) motion is timely.

Nevertheless, even assuming that Petitioner's claims are newly discovered under Rule 60(b)(2), relief from judgment under Rule 60(b)(6) "is available only in 'extraordinary

circumstances.'" *Tharpe v. Sellers*, 138 S. Ct. 545, 546 (2018) (quoting *Gonzalez,* 545 U.S. at 536. The Court concludes for the reasons given below that this is not an extraordinary case requiring relief from judgment.

## A. Lifetime Electronic Monitoring

Petitioner alleges that his no-contest plea was involuntary and unknowing because the trial court failed to notify him that his sentence would include lifetime electronic monitoring.[4] For the same reason, Petitioner argues that his sentence violates the Due Process Clause of the Fourteenth Amendment and constitutes cruel and unusual punishment under the Eighth Amendment.

### 1. Legal Framework

Petitioner has no absolute right to withdraw his no-contest plea. *Shanks v. Wolfenbarger*, 387 F. Supp.2d 740, 748 (E.D. Mich. 2005). But because a guilty or no-contest plea is a waiver of constitutional rights, it must be a voluntary, knowing, and intelligent act, "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). "The defendant need only be aware of the direct consequences of the plea, however; the trial court is under no constitutional obligation to inform the defendant of all the possible collateral consequences of the plea." *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994) (citing *Brown v. Perini*, 718 F.2d 784, 788–89 (6th Cir. 1983)).

---

[4] Michigan's statute on first-degree criminal sexual conduct provides that, "[i]n addition to any other penalty imposed under subdivision (a) or (b) [of Mich. Comp. Laws § 750.520b(2)], the court shall sentence the defendant to lifetime electronic monitoring under section 520n." Mich. Comp. Laws § 750.520b(2)(d). "Thus, the [Michigan] Legislature has mandated lifetime electronic monitoring for all [first-degree criminal sexual conduct] sentences except when the defendant is sentenced to life without the possibility of parole under § 520b(2)(c)." *People v. Comer*, 500 Mich. 278, __; 901 N.W.2d 553, 559 (2017).

7

"There is some disagreement among the courts over how to distinguish between direct and collateral consequences." *Padilla v. Kentucky*, 559 U.S. 356, 364 n.8 (2010). The Michigan Supreme Court, however, has held that "mandatory lifetime electronic monitoring is part of the sentence itself" and, therefore, "it is a direct consequence of a guilty or no-contest plea to a charge of [first-degree criminal sexual conduct] . . . when the defendant is sentenced to prison." *People v. Cole*, 491 Mich. 325, 327, 335; 817 N.W.2d 497, 498, 502 (2012). Thus, according to the Michigan Supreme Court,

> at the time a defendant enters a guilty or no-contest plea, the trial court must inform the defendant if he or she will be subject to mandatory lifetime electronic monitoring. In the absence of this information about a direct and automatic consequence of a defendant's decision to enter a plea and forgo his or her right to a trial, no defendant could be said to have entered an understanding and voluntary plea.

*Id.*, 491 Mich. at 327-28; 817 N.W.2d at 498.

### 2. Application

Petitioner's judgment of sentence clearly indicates that he was subject to lifetime electronic monitoring, *see* ECF No. 25-8, Page ID 438, but Petitioner was not informed on the record at either his plea proceeding or at his sentencing that he would be subject to lifetime electronic monitoring. *See* 10/14/08 Plea Tr. (ECF No. 25-6); 10/29/08 Sentence Tr. (ECF No. 25-7). Nevertheless, the state trial court's failure to comply with the procedural rule set forth in *Cole* is not a basis for habeas relief. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)(stating that "federal habeas corpus relief does not lie for errors of state law;" *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984) (explaining that "[a] federal court may not issue the writ on the basis of a perceived error of state law"). Even if the violation of a state procedural rule were a basis for habeas relief, Petitioner's sentence was the result of a *Cobbs* plea, *see* 10/14/08 Plea Tr., at 6-7

8

(ECF No. 25–6, Page ID 401-02), and the Michigan Supreme Court declined to decide in *Cole* "whether information about mandatory lifetime electronic monitoring must be included in the terms of sentence evaluation under *Cobbs*." *Cole*, 491 Mich. at 338 n.9; 817 N.W.2d at 504 n. 9.[5]

The United States Supreme Court, moreover, has never held that a plea is involuntary or unknowing if the defendant was not informed that a consequence of his or her plea was lifetime electronic monitoring. *Cf. Padilla*, 559 U.S. at 374 (holding that "counsel must inform the client whether his plea carries a risk of deportation"). Thus, the state trial court's failure to inform Petitioner about mandatory lifetime electronic monitoring was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d), the standard of review for challenges to state-court convictions.

Further, the Sixth Circuit has said that matters which "are beyond the control or responsibility of the [trial court] are collateral consequences of a conviction or plea." *United States v. Cottle*, 355 F. App'x 18, 20 (6th Cir. 2009). In *Cottle,* the Sixth Circuit concluded that having to register as a sex offender was only a collateral consequence of a guilty plea. *Id*. at 20-21.

Mandatory electronic monitoring will occur in Petitioner's case if and when he is released on parole. The monitoring will be beyond the control or responsibility of the trial court and, therefore, it is a collateral consequence of Petitioner's no-contest plea. The Court concludes that Petitioner's no-contest plea was not involuntary, unknowing, or a violation of due process as

---

[5] The Michigan Supreme Court also gave no indication that its decision should be applied retroactively on collateral review to defendants, like Petitioner, whose convictions became final years earlier.

a result of the trial court's failure to inform Petitioner on the record that he would be subject to lifetime electronic monitoring if he pleaded guilty.

### 3. Cruel and Unusual Punishment

Petitioner maintains that the requirement of mandatory lifetime electronic monitoring makes his sentence cruel and unusual punishment. The Eighth Amendment prohibits the imposition of cruel and unusual punishments. However, while "[s]evere, mandatory penalties may be cruel, . . . they are not unusual in the constitutional sense." *Harmelin v. Michigan*, 501 U.S. 957, 994 (1991). In *Harmelin*, moreover, the Supreme Court upheld a sentence of life imprisonment without the possibility of parole for possession of 672 grams of cocaine.

If life imprisonment without any possibility of parole for a non-violent offense is not cruel and unusual punishment, lifetime electronic monitoring for the violent crime of criminal sexual conduct is not cruel and unusual punishment. In fact, a few courts have held that electronic monitoring does not amount to cruel and unusual punishment under the Eighth Amendment. *See Ferguson v. Dier-Zimmel*, 809 F. Supp. 668, 669-70 (E.D. Wisc. 1992); *Noonan v. Hoofner*, No. 1:14-cv-830, 2014 WL 5542745, at *6 (W.D. Mich. Oct. 31, 2014) (unpublished); *Lavandera-Hernandez v. Terrell*, No. 1:12-cv-553, 2013 WL 1314721, at *7 (M.D. N.C. Mar. 28, 2013) (unpublished). The Court, therefore, declines to grant relief on Petitioner's Eighth Amendment claim.

## C. The Scoring of the Sentencing Guidelines

Petitioner asserts that his sentence is unconstitutional because the sentencing guidelines were improperly scored. A state court's application and interpretation of state sentencing guidelines is "a matter of state concern only," *Howard v. White*, 76 F. App'x 52, 53 (6th Cir.

2003), and "federal habeas corpus relief does not lie for errors of state law." *Jeffers*, 497 U.S. at 780. Petitioner, nevertheless, also alleges that the trial court relied on inaccurate information in violation of his constitutional right to due process.

The Supreme Court has stated that a sentence based on an extensively and materially false foundation, which the defendant had no opportunity to correct through counsel, violates due process. *See Townsend v. Burke*, 334 U.S. 736, 741 (1948); *see also United States v. Tucker*, 404 U.S. 443, 447 (1972) (affirming the federal appellate court's remand of a case for re-sentencing where the sentence was "founded at least in part upon misinformation of constitutional magnitude"). Accordingly, the Court will review Petitioner's claims to determine whether the trial court relied on extensively and materially false information when scoring Petitioner's sentencing guidelines. The state trial court determined on post-conviction review of Petitioner's sentencing claims that Petitioner waived any claim of a scoring error because he entered into a sentence agreement and was sentenced consistent with that agreement.

### 1. Prior Record Variable Seven

Petitioner alleges that he received a score of twenty points for prior record variable seven, which is "subsequent or concurrent felony convictions." Mich. Comp. Laws § 777.57(1). Twenty points is the correct score if "[t]he offender has 2 or more subsequent or concurrent convictions." Mich. Comp. Laws § 777.57(1)(a). Petitioner contends that his score of twenty points was inaccurate because a concurrent felony conviction that will result in a consecutive sentence under Mich. Comp. Laws § 333.7401(3) may not be counted under prior record variable seven. Mich. Comp. Laws § 777.57(2)(c). Section 333.7401 deals with the "[m]anufacturing,

11

creating, delivering, or possessing with intent to manufacture, create, or deliver [a] controlled substance, prescription form, or counterfeit prescription form." Mich. Comp. Laws § 333.7401.

Petitioner had eight concurrent convictions (two counts of kidnaping and six counts of criminal sexual conduct). His prior convictions consisted of two separate convictions for criminal sexual conduct in the third degree in 1998, larceny by impersonation in 1992, and larceny over a hundred dollars in 1993. 10/14/08 Plea Tr., p.14 (ECF No. 25-6, Page ID 409). Because he had two or more concurrent convictions which did not result in a consecutive sentence under § 333.7401, the trial court did not err in scoring twenty points for prior record variable seven.

**2. Offense Variables One and Two**

Petitioner challenges the score for offense variable one, which "is aggravated use of a weapon." Mich. Comp. Laws § 777.31(1). Petitioner received a score of fifteen points, which would be proper if "[a] firearm was pointed at or toward a victim or the victim had a reasonable apprehension of an immediate battery when threatened with a knife or other cutting or stabbing weapon." Mich. Comp. Laws § 777.31(1)(c).

Petitioner also received five points for offense variable two on the basis that he "possessed or used a pistol, rifle, shotgun, or knife or other cutting or stabbing weapon." Mich. Comp. Laws § 777.32(1)(d). Petitioner contends that he was never charged with possessing a firearm or a knife and that no knife was used in the crime. Thus, according to him, he should not have received fifteen points for offense variable one or five points for offense variable two.

One of the victims at the preliminary examination testified that Petitioner informed her and her sister that he had a knife and could hurt them. For that reason, she and her sister listened

12

to Petitioner and did what he told them to do.  6/26/08 Prelim. Examination, p. 30 (ECF No. 25-5, Page ID 315).  The other victim testified that Petitioner had said the victims were not going to live and that their families would find them cut up in a garbage can in some unknown area in Detroit.  *Id*., p. 86, Page ID 371.

The victims' testimony establishes that they were threatened and put in reasonable apprehension of an immediate battery.  The second victim, however, stated that she never saw a knife and that no knife or other weapon was ever discovered.  *Id*., p. 94, Page ID 379.  Despite this testimony, neither Petitioner, nor his attorney, challenged the scoring of offense variables one and two at his plea when the trial court informed them of the guidelines or at Petitioner's sentencing when they had an opportunity to address the trial court.  By failing to make a timely objection to the scoring of the offense variables, Petitioner forfeited his claims.  *See People v. Witherspoon*, 257 Mich. App. 329, 333; 670 N.W.2d 434, 436 (2003) (stating that, generally, "an appellant may not benefit from an alleged error that the appellant contributed to by plan or negligence").

Furthermore, Petitioner has not shown that his overall sentencing guidelines would have changed if he had received fifteen fewer points for offense variable one and five fewer points for offense variable two.  Thus, the alleged errors apparently were harmless, as well as, forfeited.

### 3.  Offense Variable Three

Offense variable three assesses points for any physical injury to a victim.  Mich. Comp. Laws § 777.33.  Petitioner states that he received ten points for this offense variable on the basis that "[b]odily injury requiring medical treatment occurred to a victim."  Mich. Comp. Laws §

777.33(1)(d). "As used in this section, 'requiring medical treatment' refers to the necessity for treatment and not the victim's success in obtaining treatment." Mich. Comp. Laws § 777.33(3).

Petitioner contends that nothing in the record shows that anyone had to be seen by medical personnel. One of the victims, however, testified at the preliminary examination that Petitioner raped her and her sister, punched her, and hit her in the head. 6/26/08 Prelim. Examination, pp. 20-21, 33-35, 37 (ECF No. 25-5, Page ID 305-06, 318-20, 322). Also, an officer who responded to the crime scene testified that the victims appeared to need medical attention. 6/25/08 Prelim. Examination, p.81 (ECF No. 25-4, Page ID 281). Given this testimony about bodily injury and the need for medical attention, the trial court did not err in scoring ten points for offense variable three.

### 4. Offense Variable Four

Offense variable four "is psychological injury to a victim." Mich. Comp. Laws § 777.34(1). Petitioner alleges that he received ten points for this offense variable. Ten points is appropriate if "[s]erious psychological injury requiring professional treatment occurred to a victim." Mich. Comp. Laws § 777.34(1)(a). When determining whether serious psychological injury may require professional treatment, "the fact that treatment has not been sought is not conclusive." Mich. Comp. Laws § 777.34(2).

Petitioner maintains that there is nothing in the record to show that a victim needed psychological treatment. One of the victims, however, testified at Petitioner's sentencing that she had nightmares after the crime. She also stated that her school scores suffered because she could not stay composed and that she lost a job she was supposed to start on the day after the

14

crime. She said that the most difficult thing was the rift that the incident created between her and her sister. 10/29/08 Sentence Tr., pp. 6-7 (ECF No. 25-7, Page ID 420-21).

The other victim's statement was read into the record at the sentence hearing. She stated that the incident continued to haunt her. She also said that she felt lost, scared, alone, stressed, constantly anxious, angry, and ashamed. She said that she could not deal with life as she formally did and that the incident had negatively affected her relationship with her sister. *Id.,* p. 8 (ECF No. 25-7, Page ID 423).

The victims' statements prove that psychological injury occurred as a result of the crimes, and the fact that the victims may not have sought treatment is not conclusive on the issue. Mich. Comp. Laws § 777.34(2). The trial court, therefore, did not err in scoring ten points for offense variable four.

### 5. Offense Variable Eight

Offense variable eight "is victim asportation or captivity." Mich. Comp. Laws § 777.38(1). Petitioner received fifteen points for asporting a victim "to another place of greater danger or to a situation of greater danger." Mich. Comp. Laws § 777.38(1)(a). According to Petitioner, it was never established that he asported anyone or held anyone captive and, therefore, fifteen points is inaccurate.

One victim, however, testified that, Petitioner entered her car uninvited and would not get out of the car when she and her sister tried to take him where he wanted to go. Petitioner later told her to park on a residential side street, and he would not let the women get out of the car. He put his arm around her throat and then raped her. After she attempted to escape from the car and flag down other cars, Petitioner pulled her back into the car and drove the women to another

15

residential location where he became more violent. She did not consent to going to those locations with Petitioner. In fact, Petitioner bound the two women's hands and feet with their scarves and physically restrained them throughout the ordeal. 6/26/08 Prelim. Examination, pp. 25-37, 41-42 (ECF No. 25-5, Page ID 310-322, 326-27). The other victim provided similar testimony and specifically testified that the car moved to two locations. *See id*., p. 86, Page ID 371.

The victims' testimony established that Petitioner held them captive and moved them to a location of greater danger when he drove them to a residential side street away from an area where people had observed at least one victim in distress. The trial court did not err in scoring fifteen points for offense variable eight.

### 6. Offense Variable Nine

Petitioner received ten points for offense variable nine (number of victims) on the basis that "[t]here were 2 to 9 victims who were placed in danger of physical injury or death." Mich. Comp. Laws § 777.39(1)(c). There were two victims, and their testimony at the preliminary examination established that they were placed in danger of physical injury when Petitioner grabbed them around the neck, punched them, and raped them. The trial court did not err in scoring ten points for offense variable nine.

### 7. Offense Variable Thirteen

This offense variable assesses whether there was a "continuing pattern of criminal behavior." Mich. Comp. Laws § 777.43(1). Petitioner alleges that he was improperly scored fifty points for this offense variable because the victims were adults and because fifty points is appropriate only if "[t]he offense was part of a pattern of felonious criminal activity involving 3

16

or more sexual penetrations against a person or persons less than 13 years of age." Mich. Comp. Laws § 777.43(1)(a).

While it is true that the victims were adults, another subsection of the statute, states that twenty-five points may be scored for an offense that "was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." Mich. Comp. Laws § 777.43(1)(c). In addition, § 777.43(2)(d) instructs courts to "[s]core 50 points only if the sentencing offense is first degree criminal sexual conduct."

There were two victims in Petitioner's case, and Petitioner committed three acts of first-degree criminal sexual conduct against each victim. The trial court, therefore, did not err when it scored offense variable thirteen at fifty points, twenty-five points for each victim.

The Court concludes that the trial court did not rely on extensively and materially false information which Petitioner had no opportunity to correct through counsel. Therefore, Petitioner's challenge to the scoring of the sentencing guidelines lacks merit.

### III. Conclusion and Order

Petitioner's claims lack merit and do not justify relief from the Court's judgment. Accordingly, the Court denies Petitioner's motion to grant the writ of habeas corpus on the basis of newly discovered claims. (ECF No. 133). The Court further orders that:

• Petitioner's request and motion for a decision and for compliance with the Sixth Circuit's order (ECF Nos. 141 and 144) are granted;

• Petitioner's motion for permission to file an affidavit (ECF No. 150) is granted;

• Petitioner's motions for release on bond pending a decision in this case (ECF Nos. 148, and 156) are denied as moot;

• Petitioner's motions for a writ of habeas corpus (ECF Nos. 153 and 155) are denied for the reasons given above; and

• Petitioner's request for a referral of his claims to the magistrate judge (ECF No. 157) is denied as moot.

A certificate of appealability is necessary before a prisoner may appeal the denial of a Rule 60(b) motion, *Johnson v. Bell*, 605 F.3d 333, 336, 339 (6th Cir. 2010), and a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). An applicant must show that reasonable jurists would debate whether the motion could have been resolved differently or that the claims raised deserve further review. *Johnson*, 605 F.3d at 339 (citing *Miller–El v. Cockrell,* 537 U.S. 322, 336 (2003)).

Reasonable jurists could debate whether Petitioner's arguments deserve further review. The Court, therefore, grants a certificate of appealability and leave to appeal *in forma pauperis*.


Date: March 19, 2018                              s/John Corbett O'Meara
                                                  United States District Judge


I hereby certify that on March 19, 2018, a copy of this opinion and order was served upon counsel of record using the ECF system, and upon Petitioner using first-class U.S. mail.


                                                  s/William Barkholz
                                                  Case Manager